**O'Melveny**

O'Melveny & Myers LLP
400 South Hope Street
18th Floor
Los Angeles, CA 90071-2899

T: +1 213 430 6000
F: +1 213 430 6407
omm.com

August 12, 2024

**Stephen McIntyre**
D: +1 213 430 8382
smcintyre@omm.com

**Filed via ECF**

United States Magistrate Judge Wes Reber Porter
U.S. District Court, District of Hawai'i
300 Ala Moana Blvd., C-338
Honolulu, Hawai'i 96850

Dear Magistrate Judge Porter:

Seeking to overcome their own lack of diligence in prosecuting this action, Plaintiffs run into Court with a procedurally improper and substantively unfounded request for expedited discovery. Dkt. 42. The Court should not allow it.

Plaintiffs' letter brief is long on accusations but short on facts and law. It mostly boils down to allegations that Alaska Airlines intended to surreptitiously close its merger with Hawaiian Airlines behind Plaintiffs' backs. This in spite of the fact that **(1)** Alaska publicly disclosed that the U.S. Department of Justice (DOJ) would complete its review of the merger by August 15, 2024; **(2)** Alaska publicly disclosed the merger agreement itself, which *requires* Alaska to close the merger within three business days once closing conditions are satisfied; and **(3)** Alaska informed Plaintiffs of DOJ's review timeline and Alaska's public disclosures.

Plaintiffs ask the Court to compel compliance with a hastily served request for 1.5 million documents and as-yet-unserved deposition notices and subpoenas. Dkt. 42 at 3. They also ask for a hearing on a preliminary-injunction motion that they have yet to file. *Id.*

The Court should deny Plaintiffs' request for at least three reasons: **(1)** the request is procedurally improper; **(2)** Plaintiffs' discovery demands are overly burdensome and not proportional to the needs of the case; and **(3)** Plaintiffs should not be allowed discovery, expedited or otherwise, before the Court rules on Alaska's pending motion to dismiss.

**I.   Alaska disclosed DOJ's deadline for completing its review of the Alaska/Hawaiian merger and the details of the closing process, but Plaintiffs neglected to act.**

Though it is not determinative of the relief Plaintiffs seek, we begin by setting the record straight. Alaska and Hawaiian announced their merger on December 3, 2023. In a Form 8-K filed contemporaneously, Alaska summarized the transaction and included a copy of the merger agreement. Alaska Air Group, Inc., Form 8-K (Dec. 2, 2023), https://tinyurl.com/mr296t2e. Section 1.2 of the agreement requires Alaska to close within three business days after closing conditions are satisfied. As Plaintiffs admit (Dkt. 42 at 4), Article 6 enumerates the closing conditions, including receipt of regulatory clearance from DOJ.

Plaintiffs' counsel apparently *had* read the news. On December 4, 2023, the day after Alaska announced the merger, Plaintiffs' counsel sent a letter to one of Alaska's former attorneys, asking: "Are these guys kidding? Where do I send the complaint?" But Plaintiffs' counsel did not match rhetoric with action, and Plaintiffs waited until April 15, 2024—four-and-a-half months later—to file this action. Dkt. 1.

When the parties first conferred on May 9, Alaska notified Plaintiffs that—as Alaska had publicly disclosed—DOJ would conclude its review of the transaction by no later than August 5. At *no point* did Alaska's counsel represent that Alaska would delay closing if DOJ cleared the transaction sooner; in fact, we specifically stated that we could not make that representation without conferring with our client. As Plaintiffs concede, they never followed up. Dkt. 42 at 2. Instead, armed with knowledge of DOJ's August 5 deadline, Plaintiffs promptly *did nothing*. Plaintiffs admit that they didn't communicate with Alaska for nearly three months. *Id.* at 1. They didn't schedule a Rule 26(f) conference, serve discovery requests, or file any motions—it was radio silence. Plaintiffs waited until August 1 to reinitiate contact, when they asked to schedule a Rule 26(f) conference for "the last day" permitted by the Court. *Id.*; *see* Dkt. 35.

During the Rule 26(f) conference on August 5, it was *Alaska's* counsel who informed Plaintiffs that, as Alaska had publicly disclosed, DOJ's review deadline had been extended to August 15. It was Alaska's counsel who asked whether Plaintiffs planned to file any near-term motions, which prompted Plaintiffs to disclose their intent to seek a TRO. And it was Alaska's counsel who underscored to Plaintiffs that Alaska would not delay closing if the transaction received DOJ clearance. The following day, Alaska's counsel reiterated to Plaintiffs by letter that Alaska would close within three business days once conditions were satisfied. And on August 7, Alaska's counsel walked Plaintiffs through the closing process laid out in the merger agreement—which, at that point, had been public for over eight months—including the three-business-day closing requirement.

Plaintiffs don't deny any of this. Nor do Plaintiffs answer the obvious question their letter brief begs: Why would they expect Alaska and Hawaiian to defer closing their merger, when the contract not only permits *but requires them* to consummate it?

Plaintiffs insist that "Alaska had an absolute good faith obligation under Rule 26(f), and under the Federal Rules in general, to notify Plaintiffs' counsel that an imminent closing on or before August 15, 2024 was possible and, indeed, planned if the airlines received DOJ approval." Dkt. 42 at 2. But they cite no law for that proposition. And they seem to have forgotten that "it is the responsibility of the plaintiff to prosecute the action at a reasonable pace and to refrain from dilatory and evasive tactics." *DLMC, Inc. v. Flores*, 2019 WL 985275, at *2 (D. Haw. 2019).

This is not the first time Plaintiffs' counsel have sat on their hands, only to seek emergency relief when a merger is on the brink of closing (or has already closed).[1]

---

[1] *E.g.*, *Taleff v. Sw. Airlines Co.*, 2013 WL 12581383, at *2 (9th Cir. 2013); *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1235 (8th Cir. 2010); *DeMartini v. Microsoft Corp.*, 2023 WL 7346402,

## II. Plaintiffs' request is procedurally improper.

Now Plaintiffs try to make their own procrastination the Court's and Alaska's problem. During the parties' August 5 conference, Plaintiffs demanded that Alaska immediately turn over the entirety of its production to DOJ—some *1.5 million* documents—along with the transcript of every deposition DOJ took in its investigation. The very next day, Plaintiffs informed Alaska of their intent to move to compel compliance with these verbal discovery demands. Yet Plaintiffs did not serve a written request for production ("RFP") until the evening of August 8, just *one day* before filing this letter brief. Dkt. 40.[2] Plaintiffs now tack on a demand for deposition dates (Dkt. 42 at 3), but they have not served any deposition notices or deposition subpoenas—and, in fact, did not mention depositions during the August 7 pre-motion conference.

Plaintiffs put the cart before the horse: they seek an order compelling Alaska to comply with an RFP that Plaintiffs had not even served when they initiated the Rule 37.1 process; with unserved deposition notices directed to unidentified Alaska witnesses; and (oddly) with unserved deposition subpoenas directed to unidentified *Hawaiian* witnesses. Dkt. 42 at 3. The Court can deny the requested relief solely on the ground that Plaintiffs flouted the Federal Rules.[3]

The Federal Rules dictate the process Plaintiffs were supposed to follow. To obtain documents, a party must "serve … a request within the scope of Rule 26(b)" that, among other things, "describe[s] with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(a), (b)(1)(A). Then, "[t]he party to whom the request is directed must respond in writing within 30 days after being served" unless otherwise stipulated or ordered. Fed. R. Civ. P. 34(b)(2)(A). To take a party deposition, a litigant must first "give reasonable written notice to every other party." Fed. R. Civ. P. 30(b)(1). To take a nonparty deposition, the litigant has to serve a subpoena under Rule 45(b)(1). If a responding party "fails to produce documents," or refuses to appear for or answer questions at a deposition, the propounding party can "move for an order compelling" the discovery. Fed. R. Civ. P. 37(a)(3)(B), (C).

Plaintiffs ignored this process. They made a verbal request for 1.5 million documents and then immediately ran to Court, neglecting to even serve an RFP until just before they filed their letter brief—which deprived Alaska of the opportunity to "respond in writing within 30 days after being served." And when Plaintiffs filed their brief, they added new demands for party and nonparty depositions about which they had not met and conferred. Courts deny motions to

---

at *1 (N.D. Cal. 2023).

[2] Plaintiffs neglect to mention that the RFP also demands that Alaska produce its experts' CVs and reports before the expert-disclosure deadlines. That is improper. *McKellips v. Kumho Tire Co.*, 305 F.R.D. 655, 681 (D. Kan. 2015).

[3] The Court could also deny the letter brief for violating Local Rule 37.1's page limit. *See* L.R. 37.1(c)(2) ("[T]he letter briefs shall be five (5) pages or less, *inclusive of all exhibits*.") (emphasis added); *Friends of Maha'ulepu, Inc. v. Hawai'i Dairy Farms, LLC*, 2016 WL 11785644, at *2 (D. Haw. 2016) ("The Motion is therefore also denied for the independent reason that it fails to comply with Local Rule 37.1.").

compel when litigants fail to properly serve discovery requests,[4] when the receiving party's deadline to respond has yet to run,[5] and when the moving party fails to meet and confer about a request.[6] This Court should deny Plaintiffs' request for the same reasons.

Plaintiffs might argue that there was no time to follow the rules. But they cannot use their own delay in seeking injunctive relief to justify emergency discovery. *See Fuhu, Inc. v. Toys "R" Us, Inc.*, 2012 WL 12870313, at *3 (S.D. Cal. 2012) (denying request for expedited discovery where plaintiffs waited "two weeks after discovering the alleged wrongdoing" before moving for a TRO). The Court should deny Plaintiffs' letter brief as procedurally improper.

### III. Plaintiffs' discovery requests are overly burdensome and disproportionate to the needs of the case.

Even if Plaintiffs had observed proper procedures, their demands would flunk Rule 26(b)(1)'s mandate that discovery be "relevant to any party's claim or defense and proportional to the needs of the case," accounting for "whether [its] burden or expense … outweighs its likely benefit." Plaintiffs have not explained what they think is relevant—they just insist that Alaska turn over its entire DOJ production and all deposition transcripts, and produce an unknown number of unnamed "executives and representatives" for deposition. Dkt. 42 at 3.

Beginning with the demand for DOJ documents and transcripts: "Such a carte blanche process flies in the face of usual litigation methods." *See In re Local TV Advertising Antitrust Litig.*, 2019 WL 13457004, at *2 (N.D. Ill. 2019) (denying motion to compel DOJ production). Plaintiffs claim there is "no cost or time burden on Alaska since those records have already been provided to the DOJ" (Dkt. 42 at 3), but Plaintiffs make no attempt to show that all 1.5 million documents are relevant to the parties' claims and defenses in *this* case. There is "surely a distinction between what [Alaska] produced to the DOJ and what [it] might produce in this private civil case"—meaning that Alaska would have "a right to screen the materials for … confidentiality[] and relevance before turning them over." *See Local TV*, 2019 WL 13457004, at *2. There is no justification for forcing Alaska to undertake that "time-consuming and expensive" exercise at this point, *see id.*, but Plaintiffs' demand that Alaska *immediately* turn over its DOJ materials would not even allow for any pre-production review.

The outsized burden on Alaska would also outweigh any arguable benefit. Producing DOJ materials wholesale would mean giving Plaintiffs millions of pages of confidential and competitively sensitive documents—before their claim even survives a motion to dismiss—

---

[4] *E.g.*, *Effinger v. Ancient Organics LLC*, 2024 WL 3643395, at *1 (N.D. Cal. 2024) (deposition notices); *Hightower v. Kaiser Found. Hosp.*, 2023 WL 11725069, at *2 (C.D. Cal. 2023) (RFPs); *Santiago v. City of Springfield*, 2022 WL 2532970, at *2 (D. Mass. 2022) (subpoenas).

[5] *E.g.*, *Cannon v. Austal USA LLC*, 2017 WL 715413, at *2 (S.D. Cal. 2017); *Dean v. Gonzales*, 2013 WL 506260, at *3-4 (E.D. Cal. 2013), *R&R adopted*, 2013 WL 1788365 (E.D. Cal. 2013); *Metzler Contracting Co. v. Stephens*, 642 F. Supp. 2d 1192, 1201 (D. Haw. 2009).

[6] *E.g.*, *Maha'ulepu*, 2016 WL 11785644, at *2; *Au v. Funding Grp., Inc.*, 2013 WL 12133655, at *2 (D. Haw. 2013); *Aarona v. Unity House, Inc.*, 2009 WL 10677203, at *2-3 (D. Haw. 2009).

thereby vitiating Alaska's "legitimate interest in maintaining the confidentiality of [its] records." *See In re Graphics Processing Units Antitrust Litig.* (*GPU*), 2007 WL 2127577, at *5 (N.D. Cal. 2007) (staying discovery of government productions). "Even a protective order cannot fully dissipate the burden of responding to the request and providing responsive materials." *In re Domestic Airline Travel Antitrust Litig.*, 174 F. Supp. 3d 375, 377 (D.D.C. 2016). That Alaska provided documents and testimony to DOJ "does not mean that [Plaintiffs] [have] an equal right to rummage through the same records." *See GPU*, 2007 WL 2127577, at *5.

As for the deposition demands: given that Plaintiffs do not identify the "executives and representatives" they seek to depose, or the number of depositions they want to take, they have not shown that the depositions are relevant or proportional to the needs of the case.

### IV. Plaintiffs are not entitled to discovery pending resolution of the motion to dismiss.

The instant letter brief is emblematic of Plaintiffs' scattershot approach—and it is why the Court must "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (quotation omitted). The Court should stay discovery pending Alaska's motion to dismiss ("MTD").

Courts in this District routinely stay discovery pending an MTD when **(1)** the motion would dispose of the entire case; and **(2)** the court can decide the motion absent additional discovery. *E.g.*, *Bralich v. Sullivan*, 2018 WL 11260499, at *1 (D. Haw. 2018); *Johnson v. Monsanto Co.*, 2016 WL 2753445, at *1 (D. Haw. 2016); *Ancier v. Egan*, 2014 WL 12591669, at *1 (D. Haw. 2014). Alaska meets both requirements for staying discovery.

*First*, Alaska's MTD would dispose of the entire case. Alaska sought dismissal because Plaintiffs lack Article III standing and antitrust standing, and because they fail to plead a Clayton Act claim. Dkt. 33-1 at 16-26. If the Court grants Alaska's MTD on *any* of these grounds, that will dispose of the entire action. *See Hu Honua Bioenergy, LLC v. Haw. Elec. Indus., Inc.*, 2017 WL 11139576, at *4 (D. Haw. 2017) (refusing to lift discovery stay pending a decision on Rule 12 motions that were "potentially dispositive of all claims in this forum").

*Second*, the Court can decide Alaska's MTD without the aid of discovery. As the Ninth Circuit held in *Mujica v. Airscan Inc.*, 771 F.3d 580 (9th Cir. 2014), "plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it." *Id.* at 593. The purpose of Rule 12(b)(6) "is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). Confronting this question in an antitrust case, *Hu Honua* underscored that a court adjudicating a Rule 12 motion must "ensure that [the plaintiff] has stated plausible claims for relief before permitting discovery." 2017 WL 11139576, at *3.

For all of these reasons, the Court should deny Plaintiffs' requested relief.

Respectfully submitted,

*/s/ Stephen McIntyre*