IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| WARREN YOSHIMOTO, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>ALASKA AIRLINES, INC. and ALASKA AIR GROUP, INC.,<br><br>Defendants. | Case No. 24-cv-00173-DKW-WRP<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** |

On April 15, 2024, Plaintiffs, an assorted group of airline passengers and former travel agents, filed suit under Sections 7 and 16 of the Clayton Antitrust Act against Alaska Airlines and the Alaska Air Group (collectively "Alaska"), seeking to enjoin Alaska's proposed acquisition of Hawaiian Airlines ("Hawaiian").  Dkt. No. 1.  Alaska now moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting: (1) Plaintiffs lack Article III or antitrust standing; (2) Plaintiffs fail to define a plausible relevant market, as required by Section 7; and (3) even within the proffered markets, Plaintiffs fail to establish that the proposed merger would have anticompetitive effects.  Dkt. No. 33.

Having reviewed the Complaint, the briefing on the motion to dismiss, and the record generally, the Court agrees that Plaintiffs lack Article III standing.  In particular, although Plaintiffs seek to enjoin the Alaska-Hawaiian merger, they

allege no personal connection to either airline that would plausibly establish a concrete or particularized harm.  Rather, they assert only the type of generalized injury that is common to "the public at large."  Accordingly, as more fully discussed herein, Alaska's motion to dismiss, Dkt. No. 33, is GRANTED and this case is DISMISSED WITHOUT PREJUDICE for lack of Article III standing.  Moreover, because it appears from Plaintiffs' brief in opposition that amendment would be futile, dismissal is WITHOUT LEAVE TO AMEND.

## FACTUAL & PROCEDURAL BACKGROUND

The Complaint alleges the following in relevant part:

Alaska Airlines—headquartered in Seattle, Washington—is the fifth largest airline in the United States.  Compl. at ¶ 81, Dkt. No. 1.  In 2017, following an industry-wide trend of consolidation, Alaska acquired Virgin America, "thereby gain[ing] dominance over the entire West Coast of the United States" by "essentially [buying] the West Coast . . . corridor."  *Id.* at ¶¶ 40, 87–88.  Now, Alaska seeks to expand even further by acquiring Hawaiian Airlines—the tenth largest airline in the United States and "a significant rival of Alaska."  *Id.* at ¶¶ 23(a), 89, 116.  Should the proposed merger go through, "Alaska would have over 40% capacity share for Hawaiʻi -U.S. mainland routes and become the largest airline for those routes."  *Id.* at ¶¶ 7(1), 113.  Further, Alaska would also take control over Hawaiian's "67% achieved market in interisland flights" and routes to

"ten international destinations across seven countries in the Pacific and Asia," both of which constitute "additional markets that Alaska is seeking to buy into, rather than compete into." *Id.* at ¶¶ 7(4)–(5), 18, 20, 114–115. This may lead to layoffs, the loss of certain services, reduced consumer choice, fewer flights, higher fares and fees, and the elimination of the unique economic and cultural attributes that Hawaiian Airlines brings to the State of Hawai'i. *Id.* at ¶¶ 4, 7(6), 12, 25, 98–102, 127–29.

Accordingly, on April 15, 2024, Plaintiffs Warren Yoshimoto, Kristin Barroga, Sean Kettley, Carolyn Fjord, Don Freeland, Don Fry, Bill Rubinsohn, and Clyde Stensrud filed suit pursuant to Sections 7 and 16 of the Clayton Antitrust Act to halt the merger. *Id.* at ¶¶ 27, 33. Identifying themselves as a mix of airline passengers and former travel agents, Plaintiffs assert that they, and the public at large, are at "substantial threat of injury . . . because the acquisition may have the effect substantially to lessen competition, and tend to create a monopoly in various markets in violation of Section 7 of the Clayton Antitrust Act." *Id.* at ¶¶ 23, 27, 33, 135–37. Plaintiffs therefore "bring suit under Section 16 of the Clayton Antitrust Act . . . to obtain preliminary and permanent injunctive relief against the proposed acquisition." *Id.* at ¶ 137.

On May 17, 2024, Alaska filed a motion to dismiss, asserting: (1) Plaintiffs lack both Article III and Section 16 antitrust standing; (2) the proposed relevant

markets are implausible and improperly defined; and (3) Plaintiffs fail to plead anticompetitive effects in the markets they attempt to define.  Dkt. No. 33. Plaintiffs filed their brief in opposition on May 31, 2024, Dkt. No. 36, and Alaska replied on June 7, 2024, Dkt. No. 37.  Pursuant to Local Rule 7.1(c), the Court elected to decide this matter without a hearing.  Dkt. No. 39.  This Order now follows.

## STANDARD OF REVIEW

### I.   Rule 12(b)(1)

A motion to dismiss for lack of standing is properly brought as a challenge to the Court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *See Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023); *see also Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("Standing is a threshold matter central to [the Court's] subject matter jurisdiction.").  To survive such a motion, the plaintiff must clearly "allege sufficient facts that, taken as true, 'demonstrat[e] each element' of Article III standing."  *Jones*, 74 F.4th at 1057 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  Nevertheless, at this stage, "general factual allegations . . . may suffice, for on a motion to dismiss [the Court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim."  *California*

*Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1100 (9th Cir. 2024) (quotation marks and citation omitted).

## II.   <u>Rule 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is considered facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do factual allegations that only permit the Court to infer "the mere possibility of misconduct."  *Id.* at 678–79 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. Article III Standing

Because standing is a threshold inquiry, the Court begins with Alaska's argument that "Plaintiffs do not establish standing under Article III." *See* Dkt. No. 33-1 at 10; *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (explaining that "[i]n its constitutional dimension, standing . . . is the threshold question in every federal case, determining the power of the court to entertain the suit.").

Article III of the United States Constitution limits federal courts to resolving only "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue." *Dep't of Com. v. New York*, 588 U.S. 752, 766 (2019). To have standing, a plaintiff must establish, at an "irreducible constitutional minimum," that he or she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). In addition, the alleged injury must be concrete and particularized, as well as actual or imminent. *See Lujan*, 504 U.S. at 560. An injury is "concrete" if it is "real and not abstract," and "particularized" where it "affect[s] the plaintiff in a personal and individual way."

*Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (quotation marks and citations omitted).  Generalized grievances or "bare procedural violation[s], divorced from any concrete harm," are insufficient to satisfy the standing requirements.  *See Carney v. Adams*, 592 U.S. 53, 58–59 (2020); *Spokeo*, 578 U.S. at 341.

Here, Plaintiffs fail at the very first step—injury in fact.[1]  In their Complaint, Plaintiffs assert that the proposed Alaska-Hawaiian merger threatens them with substantial harm because each of them "is an airline passenger, and some are former travel agents, all with the express interest and intent in ensuring that the unique qualities of Hawaiian are preserved as a competitive option for them, now and in the future."[2]  Compl. at ¶ 27.  As a result, they claim that "[t]he potential elimination of Hawaiian may cause loss and harm to the Plaintiffs, and to the public at large, of the salutary benefits of the competition that Hawaiian brings, as well as the opportunity to fly and continue to fly on Hawaiian."  *Id.*

However, such bare assertions are not sufficient to establish a concrete and particularized injury under Article III.  For instance, although Plaintiffs claim to be "airline passenger[s]" who hope "to fly and continue to fly on Hawaiian," there is

---

[1]Of course, without a proper injury in fact, "traceability and redressability—the other standing elements—cannot be satisfied" either.  *Ballering v. Dep't of Pro. Licenses*, 2020 WL 7389742, at *2 (D. Haw. Dec. 16, 2020).
[2]Of the eight Plaintiffs, three are residents of the State of Hawai'i and five live in other locations ranging from Jenkintown, Pennsylvania to Winters, California.  *See* Compl. at ¶ 27.

no indication that any of them has *ever* flown on Alaska or Hawaiian or has any concrete plans to do so in the future. *See id.*; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 495–96 (2009) (finding no concrete and particularized injury where plaintiffs asserted only vague future intentions to travel). Moreover, while Plaintiffs claim that "some [of them] are former travel agents," they fail to even identify *whom*, let alone how such employment might cause those Plaintiffs to experience actual or individualized harm from the proposed merger. *See* Compl. at ¶ 27. Such vague and conclusory statements are far from sufficient to establish the kind of "personal stake" that injury-in-fact requires.[3] *See Raines v. Byrd*, 521 U.S. 811, 818–19 (1997); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (explaining that plaintiffs must "be able to sufficiently answer the question: 'What's it to you?'" (citation omitted)). As a result, they do not give rise to standing under Article III. *See DeMartini v. Microsoft Corp.*, 2023 WL 4239653, at *2 (N.D. Cal. June 27, 2023) (finding no Article III standing from the complaint's allegations that "some (unidentified) Plaintiffs" would suffer injury from a proposed merger).

---

[3]Indeed, Plaintiffs Fjord, Freeland, Fry, Rubinsohn, and Stensrud have faced dismissal on similar grounds in previous antitrust actions. *See, e.g.*, *Garavanian v. Jet Blue Airways Corp.*, – F. Supp. 3d –, 2023 WL 8627631, at *1–3 (D. Mass. 2023) (explaining that plaintiffs' assertions that they were airline passengers and travel agents were insufficiently "concrete and particularized" to confer Article III standing to challenge the JetBlue-Spirit merger); *Whalen v. Albertsons Cos. Inc.*, 2023 WL 8812882, at *1 (N.D. Cal. Dec. 20, 2023) (finding that plaintiffs lacked Article III standing where they "failed to provide enough information about their own situations to adequately allege they are likely to suffer an injury from the proposed merger").

The absence of personal information leaves Plaintiffs with having asserted nothing more than "generalized grievances."  Plaintiffs claim that "the proposed elimination of Hawaiian by Defendant Alaska constitutes a substantial threat of injury to the Plaintiffs because the acquisition may have the effect substantially to lessen competition and tend to create a monopoly in various markets in violation of Section 7 of the Clayton Antitrust Act."  *Id.* at ¶ 33.  As a result, they, along with "all consumers," purportedly risk:

> (1) the loss of the distinct services and in-flight experiences offered by Hawaiian; (2) a reduction of customer choice; (3) a reduction in capacity and the curtailment of flights thereby creating higher prices and severe inconvenience to consumers; (4) the loss of the only local airline currently headquartered in Hawaiʻi with the substitution of an absentee owner and operator; and (5) ultimately the loss of a vibrant, respected local competitor who has brought so much to Hawaiʻi since its inception.

*Id.* at ¶ 129.

These allegations, however, do not demonstrate any kind of particularized harm.  Notably, Plaintiffs' principal assertion—that the proposed merger presents a substantial threat of injury because it may stifle competition and tend to create a monopoly—is simply a claim of "abstract and generalized harm to a citizen's interest in the proper application of the law."  *See Carney*, 592 U.S. at 58; *see also Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (explaining that "proof of an [antitrust] violation and of antitrust injury are distinct matters that must be shown independently." (quotation marks and citation omitted)).

Moreover, as Plaintiffs themselves acknowledge, their list of enumerated concerns is so generic as to be shared by "all consumers."[4]  *See* Compl. at ¶ 129; *see also id.* at ¶ 27 (alleging that "[t]he potential elimination of Hawaiian may cause loss and harm to the Plaintiffs, and *to the public at large*." (emphasis added)).  In other words, Plaintiffs' alleged injuries are precisely the kind of "undifferentiated" claims of harm which are "inconsistent with the framework of Article III" because they are "common to all members of the public."  *Lujan*, 504 U.S. at 575 (quotation marks and citations omitted).  As a result, they "do[] not count as an 'injury in fact'" and cannot support standing.  *Carney*, 592 U.S. at 58; *accord Lujan*, 504 U.S. at 573 ("We have consistently held that a plaintiff raising only a generally available grievance . . . and seeking relief that no more directly and tangibly benefits him than it does the public at large [] does not state an Article III case or controversy.").

Undeterred by these deficiencies, Plaintiffs insist that to bring their claim, they need *not* allege that "the merger threatens them with any concrete, particularized, and impending harm."  *See* Dkt. No. 36 at 10 n.3, 13.  Rather,

---

[4]Beyond lacking particularization, this list of injuries is also far too conclusory and hypothetical to constitute a concrete injury under Article III.  *See* Compl. at ¶ 129; *Marion HealthCare, LLC v. S. Illinois Hosp. Servs.*, 2022 WL 2317303, at *3 (S.D. Ill. June 28, 2022) (finding that although "possible, and arguably probable, that the [proposed] merger will have an effect on [plaintiff's business," plaintiff's claims that "the illegality of the merger itself" would lead to "increased prices to patients, a reduction of choice of institutional providers and physicians, reduced referrals suppressing [plaintiff's] ability to compete, and the like" was too speculative to confer Article III standing).

"[u]nder Section 16 of the Clayton Antitrust Act, Plaintiffs 'need only demonstrate a significant **threat of injury** from an impending violation of the antitrust laws' in order to establish Article III standing." *Id.* at 10 (citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130 (1969)).  Plaintiffs therefore assert that they "have standing now because they are *threatened* with . . . precisely the type of harm that the Clayton Antitrust Act is designed to prevent." *Id.* at 11–12.

This argument, however, improperly conflates constitutional standing with the statutory requirements to bring a claim under Section 16 of the Clayton Antitrust Act.  Contrary to Plaintiffs' assertions, constitutional and statutory standing are two distinct inquiries.[5] *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174–75 (9th Cir. 2004); *Spokeo*, 578 U.S. at 341.  Indeed, without Article III standing, there can be no Section 16 standing.  *See Cetacean Cmty.*, 386 F.3d at 1174 ("If a plaintiff lacks Article III standing, Congress may not confer standing on that plaintiff by statute."); *Lucas Auto Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998) (explaining that Article III standing comes before antitrust standing).  As a result, to bring their Clayton Antitrust Act claim, Plaintiffs must establish that the proposed merger presents them with a

---

[5]Of course, Plaintiffs' counsel should be aware of this given that they have previously asserted the same argument to no avail.  *See Whalen v. Albertsons Cos. Inc.*, 2023 WL 4955141, at *1 (N.D. Cal. Aug. 2, 2023) (explaining that "simply inton[ing] that the federal antitrust statutes give them the right to sue . . . is beside the point for purposes of constitutional standing.").

*concrete* and *particularized* injury—something that, for the reasons discussed above, they have failed to satisfy.[6]  *See supra* 6–10; *see also Bearden v. Ballad Health*, 967 F.3d 513, 518 (6th Cir. 2020) (noting that there is "no Clayton Antitrust Act exception to [the injury-in-fact] rule.").

In sum, Plaintiffs' conclusory and generalized allegations are wholly insufficient to satisfy Article III's standing requirements.  The Court therefore lacks subject matter jurisdiction over and DISMISSES this case.[7]  *See* Fed. R. Civ. P. 12(h)(3).

## II.   Leave to Amend

In general, plaintiffs should freely be given leave to amend their complaints when "justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Court may, however, deny leave to amend when: (1) it would prejudice an opposing party; (2) it is sought in bad faith; (3) it would produce an undue delay in litigation; (4) it would be futile; or (5) there has been repeated failure to cure a deficiency.  *See Abagninin*

---

[6]To the extent that Plaintiffs attempt to add factual allegations supporting Article III standing in their opposition brief, such statements cannot be considered on a motion to dismiss.  *See* Dkt. No. 36 at 3 (claiming, *inter alia*, that "Plaintiffs include consistent and regular Hawaiian fliers."); *Denis v. Ige*, 2021 WL 5312294, at *4 (D. Haw. Nov. 15, 2021) (noting that "[a] plaintiff may not amend his complaint through an opposition brief.").  Nor in any case would these allegations be sufficient to establish Article III standing. *See infra* 13.

[7]Because Plaintiffs lack Article III standing, the Court does not address Alaska's other arguments for why this case should be dismissed.  *See* Dkt. No. 33-1 at 17–26; *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1103 (9th Cir. 2006) (explaining that "[b]ecause [plaintiff] lacked standing . . . the district court lacked subject matter jurisdiction over the claim and should have dismissed on that basis without discussing the merits.").

*v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen*

*Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Here, the Court finds that justice does not require leave to amend.  In their

opposition brief, Plaintiffs attempt to bolster their Article III standing argument by

adding facts not present in the Complaint—for instance, explaining that Plaintiffs

include "airline passengers who regularly fly on Hawaiian" and "regularly travel

the impacted routes."  Dkt. No. 36 at 3.  But these additional allegations, even if

present in the Complaint, still would not come close to alleging a concrete and

particularized injury.  These additions, for example, tell us nothing about *which*

Plaintiff regularly flies on Hawaiian and/or travels the impacted routes, let alone

how the proposed merger would threaten or harm such travels.  *See id.*  As a result,

given that the represented Plaintiffs have already had an opportunity to explain

what they would do if given a chance at amendment and, in fact, never requested

leave to amend, the Court finds that granting leave would be futile.[8]  Leave to

amend is DENIED.

---

[8]The Ninth Circuit has explained that "[f]acts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice."  *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

## <u>CONCLUSION</u>

For the reasons set forth herein, Alaska's motion to dismiss, Dkt. No. 33, is GRANTED, and this case is DISMISSED WITHOUT PREJUDICE for lack of Article III standing.  *See Fleck & Assocs.*, 471 F.3d at 1106–07 (explaining that dismissals for lack of standing should be without prejudice).  Because amendment would be futile, dismissal is WITHOUT LEAVE TO AMEND.

The Clerk of Court is instructed to CLOSE this case.

IT IS SO ORDERED.

DATED: August 12, 2024 at Honolulu, Hawaiʻi.



Derrick K. Watson
Chief United States District Judge

---

Warren Yoshimoto et al. vs. Alaska Airlines, Inc. and Alaska Air Group, Inc.; Civil No. 24-00173 DKW-WRP; **ORDER GRANTING MOTION TO DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND**