IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WARREN YOSHIMOTO, KRISTIN BARROGA, SEAN KETTLEY, CAROYLN FJORD, DON FREELAND, DON FRY, BILL RUBINSOHN, and CLYDE D. STENSRUD, <br><br> Plaintiffs, <br><br> vs. <br><br> ALASKA AIRLINES, INC. and ALASKA AIR GROUP, INC., <br><br> Defendants. | Civil No. 24-00173 MWJS-WRP <br><br> ORDER GRANTING MOTION TO DISMISS, RESERVING DECISION ON WHETHER TO GRANT FURTHER LEAVE TO AMEND, AND DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND CROSS-MOTION TO STRIKE AS MOOT |

## **INTRODUCTION**

This is a private antitrust action against Alaska Airlines, Inc. and Alaska Air Group, Inc. (collectively "Alaska Airlines" or "Alaska") in which a group of regular airline passengers sue to undo the merger of Alaska and Hawaiian Airlines ("Hawaiian").  In earlier proceedings, this court granted a motion to dismiss the initial complaint because Plaintiffs failed to allege Article III standing.  The Ninth Circuit affirmed the dismissal, but remanded to allow Plaintiffs an opportunity to amend their complaint.  Plaintiffs availed themselves of that opportunity, and Alaska now moves to dismiss their First Amended Complaint (the "FAC"), this time solely for reasons going to the merits.  For the reasons that follow, the motion is GRANTED.

## BACKGROUND

**A.      The First Amended Complaint**

Although the FAC contains a mix of factual allegations, bald factual conclusions, and legal assertions—and while only the well-pleaded factual allegations are assumed true at the motion-to-dismiss stage, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)—the court summarizes the full sweep of the FAC to provide context for the discussion that follows.

According to the FAC, consolidation has reshaped the airline industry, and "in 2008, major airlines began their feeding frenzy of mega-acquisitions which has resulted in the reduction of the major airlines from eight competitors to four, effectively halving the principal competitive air transportation choices to the passenger public." Dkt. No. 64, at PageID.700.  The "four behemoths, Delta, United, Southwest and American (the 'Big Four'), after having substantially eliminated all significant major competition, now control 84% of all passenger airline service in the United States."  *Id.* at PageID.702-03. They also "account for 74/84% of U.S. capacity."  *Id.* at PageID.706.  To "maintain this dominance and control of the industry, these four giants stay in constant contact and instant price communication by means, among others, of a jointly owned and controlled 'clearing house,' APTCO, as well as CEO and executive contacts through secretive email, private telephone calls, and personal meetings at resorts" and other locations.  *Id.* at PageID.703.

Alaska and Hawaiian are not part of this Big Four—and are not alleged to participate in these "secretive email[s], private telephone calls, and personal meetings at resorts"—and even their combined seat numbers are substantially lower than those of the smallest Big Four member. *Id.* at PageID.706. But Alaska and Hawaiian have sought to combine forces. On December 3, 2023, Alaska announced an agreement to purchase Hawaiian,[1] and the acquisition closed on September 18, 2024. *Id*. at PageID.685.

The FAC does not distinctly allege, but it is an undisputed public fact, that after Alaska and Hawaiian provided pre-merger notification forms with the Department of Justice (DOJ) and the Federal Trade Commission (FTC), DOJ declined to challenge the merger in August 2024. Dkt. No. 69-1, at PageID.775.[2] DOT gave its approval the following month, *id.*, which the FAC acknowledges was conditioned upon certain "guardrails," to remain in place "for 6 years from the acquisition," such as a "1:1 honoring of HawaiianMiles," "maintaining a robust level of service for inter-island passengers and cargo," and "maintaining key routes between Hawaiʻi and the U.S.

---

[1] Plaintiffs did not bring this lawsuit until four months after Alaska's announcement on December 3, 2023. *See* Dkt. No. 1 (filed Apr. 15, 2024).

[2] Plaintiffs did not move for a temporary restraining order until after DOJ's declination, and after this court had already dismissed their initial complaint for lack of Article III standing. Dkt. Nos. 49, 50.

mainland," Dkt. No. 64, at PageID.727.  Hawaiian flew its last flight under its own call sign on October 31, 2025.  *Id.* at PageID.685.

The FAC alleges a variety of ways in which Hawaiian has been an important employer and community member in Hawai'i.  *Id.* at PageID.708-14.  And it generally alleges that the Alaska-Hawaiian merger "threatens Hawai'i's economy and the well-being of Hawai'i's people."  *Id.* at PageID.677; *see also id.* at PageID.681-83.  But in support of its antitrust claims, the FAC more specifically alleges that the acquisition "reduces and may continue to greatly reduce airline competition in three distinct markets:"  (a) the "Hawai'i – U.S. mainland" market; (b) the "Interisland in Hawai'i" market; and (c) the "Hawai'i to Pacific and Asia" market.  *Id.* at PageID.725.

In what it defines as the "Hawai'i – U.S. mainland" market, the FAC identifies Hawaiian, Alaska, American, Delta, Southwest, and United as the "major airlines [that] comprise most direct flights to and from the U.S. mainland and Hawai'i."  *Id.* at PageID.707.  As of December 2023, Hawaiian seat capacity in this market was 23 percent, and Alaska's was 17 percent.  *Id.*  The combined airline now holds 40 percent of the seat capacity, which makes it "the largest airline for those routes."  *Id.* at PageID.680. The FAC further alleges that, within this "Hawai'i – U.S. mainland" market, Hawaiian and Alaska serve twelve routes that directly overlap, meaning that the merger "eliminated competition between these two carriers on these routes."  *Id.*

4

The FAC does not allege that Hawaiian and Alaska competed at all in the "Interisland in Hawaiʻi" market or the "Hawaiʻi to Pacific and Asia" market, however. Before the merger, Hawaiian held 67 percent of the "market in interisland flights," but Alaska did not compete in that market. *Id.* at PageID.681. The FAC does not allege what percentage of the "Hawaiʻi to Pacific and Asia" market Hawaiian held, but it acknowledges that Alaska did not compete in that market, either. As the FAC puts it, Alaska "is seeking to buy into, rather than compete into," these markets. *Id.* The FAC does not allege that Alaska was on the cusp of competing in either of these markets prior to the merger.

The FAC does generally allege that airlines compete freely across the entire United States. According to the FAC, "[a]irfares are generally constrained by actual and potential competition from other airlines within the market." *Id.* at PageID.725. "Since any major existing airline has the capability to enter any market throughout the United States, the threat of potential competition from other existing airlines entering the market constrains airfares and services." *Id.*

The FAC alleges several of what it characterizes as "anticompetitive effects since acquisition." *Id.* at PageID.727 (cleaned up). First, "Plaintiffs have experienced increased fees, reduced services, and fewer available flights on key routes between Hawaii and the U.S. Mainland." *Id.* Second, the "guardrails" that DOT put in place "are only temporary assurances" and only "effective for 6 years from the acquisition."

*Id.*  Third, five routes between Hawaiʻi and the continental U.S. and three routes between Hawaiʻi and locations in Asia have become "less favorable."  *Id.* (cleaned up).  Fourth, Alaska has begun to use Hawaiian's larger aircraft for flights outside of Hawaiʻi, to the disadvantage of travelers to and from Hawaiʻi.  *Id.* at PageID.728-29.  Fifth, 252 Hawaiian employees have been terminated.  *Id.* at PageID.730.  And sixth, Hawaiian's "HawaiianMiles" loyalty points program has been folded into a new "Atmos Rewards" that "combines Alaska and Hawaiian points," and "[o]n information and belief, Plaintiffs' reward miles are worth substantially less than they were before the acquisition."  *Id.* at PageID.730.

The FAC also alleges two "anticompetitive effects of the transaction generally." *Id.* at PageID.734 (cleaned up).  First, it alleges that the acquisition eliminated a competitor in the airline industry, gave Alaska "40% of the Hawaiʻi U.S.-mainland market," and allowed Alaska to "buy its way into" the "interisland market" (in which it has now taken over Hawaiian's "over 60%" share) as well as the Asia and Pacific market.  *Id.*  This, in the FAC's view, contravenes "the policy of the United States making competition rather than merger and acquisition, as the rule of trade."  *Id.* Second, the FAC alleges that "the relevant markets are highly concentrated and the acquisition of Hawaiian results in presumptively unlawful market concentrations."  *Id.*

On the strength of these allegations, the FAC alleges a violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and Section 7 of the Clayton Antitrust Act, 15

U.S.C. § 18.  As remedies, the FAC seeks a declaratory judgment that the merger

agreement is unlawful, a permanent injunction against the continued acquisition, and

divestiture and disgorgement of any profits since the acquisition.  *Id.* at PageID.740-41.

### B.   The Pending Motions

As noted, this court granted an earlier motion to dismiss the initial complaint in

this case, Dkt. No. 45,[3] and the Ninth Circuit affirmed the dismissal, *Yoshimoto v. Alaska*

*Airlines, Inc.*, No. 24-6692, 2025 WL 2911144 (9th Cir. Oct. 14, 2025).  The Ninth Circuit

nonetheless concluded that Plaintiffs should have an opportunity to amend their

complaint and remanded for that purpose.  *Id.* at *2.  The FAC was filed on

November 26, 2025.  Dkt. No. 64.

Alaska filed its motion to dismiss on January 16, 2026.  Dkt. No. 69.  It contends

that the FAC should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil

Procedure because Plaintiffs fail to state a claim under either Section 7 of the Clayton

Act or Section 1 of the Sherman Act; because Plaintiffs have failed to adequately allege a

basis for injunctive relief; and because Plaintiffs have not demonstrated that they are

entitled to the remedy of divestiture.  Dkt. No. 69-1.  Plaintiffs have opposed the

motion, Dkt. No. 83, and Alaska has filed a reply in further support, Dkt. No. 86.

---

[3]    That earlier decision was issued by the Honorable Derrick K. Watson, Chief U.S.
District Judge for the District of Hawaiʻi.  On March 27, 2026, Chief Judge Watson
entered an order of recusal and the matter was reassigned to the undersigned district
judge.

On February 23, 2026—about three months after they had filed their FAC, and more than a month after Alaska filed its motion to dismiss—Plaintiffs moved for an "immediate temporary restraining order."  Dkt. No. 79.  In their motion, Plaintiffs argue that the court should grant it the interim equitable relief of an order "divesting Alaska of any and all interest acquired in Hawaiian and disgorging any unlawful profits."  *Id.* at PageID.995.  Attached to Plaintiffs' motion are declarations from three of the Plaintiffs, Dkt. Nos. 79-2 through 79-4, as well as an expert report from Carl Lundgren, Dkt. No. 79-5.  Alaska filed a memorandum in opposition to Plaintiffs' motion, as well as a counter motion to strike Lundgren's expert report.  Dkt. No. 84.  Plaintiffs then filed a reply in further support of their motion, Dkt. No. 87, and a separate opposition to Alaska's counter motion, Dkt. No. 89.

Amidst these various maneuvers, another one was underway before the Magistrate Judge.  On February 2, 2026, and citing the fact that "discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case," Alaska moved to stay discovery while its motion to dismiss was being considered.  Dkt. No. 74-1, at PageID.823 (quoting *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008)).  Plaintiffs opposed that motion, Dkt. No. 76, but the Magistrate Judge granted it, Dkt. No. 81.  An appeal of that decision is now pending before this court, Dkt. No. 90, but the court has not set that appeal for hearing.

8

Instead, the court held a hearing on April 13, 2026, on Alaska's motion to dismiss, Plaintiff's motion for a temporary restraining order, and Alaska's counter-motion to strike Plaintiffs' expert report.  Dkt. No. 99.  Because the motion to dismiss would, if granted, moot the motion for a temporary restraining order and the counter-motion to strike, the court begins there.  And, for the reasons that follow, the court ends there, too.[4]

### DISCUSSION

**A.     Plaintiffs Have Adequately Alleged Article III Standing**

Although Alaska no longer challenges the sufficiency of Plaintiffs' Article III standing allegations, *see* Dkt. No. 86, at PageID.1251, the court has an independent obligation to assure itself that standing has been adequately pleaded.

In the earlier proceeding, Plaintiffs failed to allege Article III standing because they alleged no injury in fact.  As the court observed, "there is no indication [in the initial complaint] that any of them has *ever* flown on Alaska or Hawaiian or has any concrete plans to do so in the future."  Dkt. No. 45, at PageID.272-73.  The court also indicated that even assertions of "vague future intentions to travel" would not allege a

---

[4]      Following the hearing, the undersigned district judge identified a possible ground for recusal.  The Clerk of Court afforded the parties an opportunity to remit (that is, waive) the possible ground, Dkt. No. 100, and all counsel and their clients chose to do so, Dkt. No. 101.

sufficiently "concrete and particularized injury." *Id.* at PageID.273 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 495-96 (2009)).

The FAC addresses these deficiencies. It now alleges that each of the six named Plaintiffs has regularly traveled on Hawaiian (and some on Alaska) within Hawaiʻi and between Hawaiʻi and the continental United States. Dkt. No. 64, at PageID.688-93. It alleges that some Plaintiffs held HawaiianMiles rewards that allegedly have been diluted in value. *Id.* And it alleges that at least one of the Plaintiffs plans to make a specific future trip from the continental United States to Hawaiʻi. *Id.* at PageID.692. These allegations are sufficient, at this pleading stage, to allege Article III standing. The court therefore turns to the merits of Alaska's motion to dismiss.

**B.     Plaintiffs Have Failed to Allege a Sufficient Basis for Divestiture or Injunctive Relief**

The easiest question is whether Plaintiffs have adequately alleged a sufficient factual basis to support their request for divestiture or for injunctive relief. They have not.

1. Courts have recognized that divestiture is an "extreme remedy." *Taleff v. Sw. Airlines Co.*, 828 F. Supp. 2d 1118, 1123-25 (N.D. Cal. 2011) (quoting *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 322 (3d Cir. 2007)), *aff'd*, 554 F. App'x 598 (9th Cir. 2014). It is especially extreme when the merging companies "ha[ve] already 'combined their sizeable operations and today function as one corporate entity.'" *Id.* at 1124 (quoting *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1234 (8th Cir. 2010)). When companies have

10

"already consummated their merger and combined their operations into a single corporate entity," the "remedial equities" often "balance overwhelmingly in favor of denying the remedy of divestiture." *Id.* (cleaned up).

The procedural history of this case makes divestiture an inappropriate remedy here. As Alaska notes, Plaintiffs "were well-aware of the highly publicized Alaska/Hawaiian merger," and yet "waited four months after the merger announcement to bring suit." Dkt. No. 69-1, at PageID.795 (cleaned up). Yet Plaintiffs did not move for a temporary restraining order until August 2024, after DOJ declined to challenge the merger and this court had already dismissed Plaintiffs' lawsuit for lack of Article III standing. *See supra* p.3 nn.1 & 2. Even now, Plaintiffs offer no argument for why the equities would weigh in favor of divestiture. This is not a record that supports the extreme remedy of divestiture—and certainly not the divestiture of two companies that are now operating as one. *See Taleff*, 828 F. Supp. 2d at 1125 (dismissing request for divestiture "on the ground that Plaintiffs have failed to demonstrate that they are entitled" to it).

Compounding matters, Alaska explicitly argues in its motion to dismiss that Plaintiffs have failed to offer a sufficient basis for obtaining divestiture, *see* Dkt. No. 69-1, at PageID.794-96, but Plaintiffs have failed to offer a response to that argument in their opposition to the motion, *see* Dkt. No. 83. It is well-established that "[w]here a party fails to address arguments against a claim raised in a motion to dismiss, the

claims are abandoned and dismissal is appropriate." *Karwowski v. Gen Digital, Inc.*, No. 24-7213, 2025 WL 3002610, at *2 (9th Cir. Oct. 27, 2025) (quoting *Lunn v. City of Los Angeles*, 629 F. Supp. 3d 1007, 1014 (C.D. Cal. 2022)); *see also Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("A plaintiff who makes a claim for injunctive relief in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss on the grounds of immunity from money damages, has effectively abandoned his claim, and cannot raise it on appeal.").  That is precisely what Plaintiffs have done—or, more precisely, failed to do—here.

At the hearing on the motion to dismiss, counsel for Plaintiffs contended that their opposition brief *does* adequately address divestiture.  The argument appears to be that Plaintiffs' opposition cites cases that contain discussions of the divestiture remedy.  The further argument appears to be that because the opposition addresses antitrust standing (a matter taken up next), it can also be viewed as having addressed divestiture as well.  Neither of these arguments is persuasive.  A party cannot properly respond to an argument in a motion to dismiss by merely citing a case that happens to contain an analysis of the issue—especially when, as here, that case appears in the opposition brief's discussion of a different issue.  And antitrust standing is unquestionably a different issue—it concerns, as we will see momentarily, the ability of a private litigation to seek injunctive relief at all.  The mere fact that a plaintiff might have adequately alleged that form of standing does not begin to answer whether the extreme

remedy of divestiture *should* be granted.  Plaintiffs have offered no opposition to

Alaska's argument that it should not.  That counts as abandonment.

Accordingly, both because the record does not support the requested relief of

divestiture, and because Plaintiffs have abandoned that request by failing to address

Alaska's arguments, the court grants Alaska's motion to dismiss the FAC's requested

relief of divestiture.  And given Plaintiffs' abandonment, this dismissal is with prejudice

and without further leave to amend.  *See, e.g., Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191,

1205 (N.D. Cal. 2014) ("[W]here a plaintiff simply fails to address a particular claim in

its opposition to a motion to dismiss that claim, courts generally dismiss it with

prejudice."  (cleaned up)).

2.  Plaintiffs' request for injunctive relief has not clearly been abandoned, but

Plaintiffs have not offered any persuasive argument to salvage it.

Alaska's motion to dismiss explicitly argued that Plaintiffs lacked antitrust

standing to seek injunctive relief.  As Alaska explained, "[a]ntitrust standing is a

separate and 'more demanding' hurdle than Article III standing."  Dkt. No. 69-1, at

PageID.792 (quoting *Bakay v. Apple Inc.*, No. 24-5314, 2025 WL 3012822, at *2 (9th Cir.

Oct. 28, 2025)).  To clear that hurdle, Plaintiffs "must show 'threatened loss or damage

of the type the antitrust laws were designed to prevent.'"  *Id.* (quoting *Cargill, Inc. v.

Monfort of Colo., Inc.*, 479 U.S. 104, 113 (1986)).  And Alaska argued Plaintiffs had not

done so:  five Plaintiffs did not allege at all that they had any specific upcoming trips

13

planned, and the sixth did not allege that she would be traveling on a route on which

Alaska and Hawaiian had ever been competitors.

Plaintiffs offer the conclusory assertion that they "continue to be threatened with

loss or further damage from reduced competition as this acquisition continues to

eliminate competition, and are entitled to pursue injunctive relief to prevent that harm."

Dkt. No. 83, at PageID.1099.  But they offer no argument for why the five Plaintiffs who

failed to allege any future trips would be facing future harm.  They likewise offer no

argument for why the sixth Plaintiff would suffer any antitrust injury in flying on a

route on which Hawaiian and Alaska had never competed before.

The court therefore will grant Alaska's motion to dismiss Plaintiffs' request for

injunctive relief.  But because the court cannot say that Plaintiffs completely "fail[ed] to

raise the issue in response to [Alaska's motion to dismiss]," *Walsh*, 471 F.3d at 1037, it

does not find that Plaintiffs abandoned this issue.  Given the lack of abandonment, the

question of whether to grant further leave to amend on this issue is a more complicated

one, and the court will address that issue toward the end of this order.

### C.    The First Amended Complaint Fails to State a Claim for Relief

This brings us to the heart of Alaska's motion to dismiss, in which it argues that

the FAC fails to state a claim for relief.  To be sure, the FAC advances claims under

Section 1 of the Sherman Act and Section 7 of the Clayton Act, and there is no dispute

that private parties may bring claims under these provisions.  Alaska's contention is not

14

that there is some legal impediment to Plaintiffs' lawsuit, but rather that they have failed to offer sufficient factual allegations to buttress it.

This argument has purchase in the context of antitrust litigation. The Supreme Court's preeminent decision on pleading standards involved a private antitrust action. The Court there recognized that "proceeding to antitrust discovery can be expensive." *Twombly*, 550 U.S. at 558. For that reason, the Court insisted that district courts must "retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* (cleaned up). And while a district court is required to accept factual allegations as true at the motion to dismiss stage, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555 (cleaned up). In the end, the question for a district court faced with a motion to dismiss is whether plaintiff's "[f]actual allegations" are "enough to raise a right to relief above the speculative level." *Id.*

To do so here, Plaintiffs must offer sufficient factual allegations to show a product market, a geographic market, and anticompetitive effects within the defined markets. *See, e.g., Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1104 (9th Cir. 1999). For purposes of its motion to dismiss, Alaska accepts that Plaintiffs have offered a sufficient product market—namely, "scheduled air passenger service." Dkt. No. 69-1, at PageID.780 n.15. But Alaska argues that the FAC has failed to meet the latter two requirements.

15

### 1.    The FAC Fails to Plausibly Allege a Geographic Market

A geographic market is ordinarily understood to be the "area of effective competition where buyers can turn for alternate sources of supply." *St. Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys.*, 778 F.3d 775, 784 (9th Cir. 2015) (cleaned up). It includes "the group of sellers or producers who have the actual or potential ability to deprive each other of significant levels of business." *Id.* A "common method to determine the relevant geographic market" is to "find whether a hypothetical monopolist could impose a small but significant nontransitory increase in price"—or "SSNIP"—in "the proposed market." *Id.* (cleaned up). "If enough consumers would respond to a SSNIP by purchasing the product from outside the proposed geographic market, making the SSNIP unprofitable, the proposed market definition is too narrow." *Id.*

In this case, the FAC alleges that there are three relevant geographic markets: (a) the "Hawai'i – U.S. mainland" market; (b) the "Interisland in Hawai'i" market; and (c) the "Hawai'i to Pacific and Asia" market. Dkt. No. 64, at PageID.725.[5]

---

[5]    At the hearing on the motion to dismiss, counsel for Plaintiffs contended that the FAC should also be read to allege several additional geographic markets, and he directed the court to the passage in the FAC that refers to these as "markets." Dkt. No. 64, at PageID.720 (referring to the "markets" of "Seattle/Honolulu," "Los Angeles/Honolulu," "Seattle/Kahului," "Portland/Honolulu," and "San Diego/Honolulu"). But this stray use of language is not sufficient to allege that these— and perhaps other passing references in the complaint—are the proposed geographic markets at issue in this case. The FAC, in fact, could not be clearer: "Courts define relevant product and geographic markets to determine which lines of commerce and

16

The basic problem for Plaintiffs is that the FAC offers no factual allegations to make any of these proposed markets plausible.  For one thing, it does not offer any factual basis to conclude that passengers would consider scheduled air passenger service within any of these broadly defined markets as interchangeable or alternative sources of supply.  For another, the absence of any factual allegations dovetails with what common sense suggests, which is that there are no factual allegations that could be offered in support of these sprawling market definitions.  It is difficult to imagine that any meaningful number of individuals on Kaua'i who wish to travel to Honolulu would shift to a flight between Maui and Moloka'i in the face of an SSNIP.  It is similarly difficult to conceive of any meaningful number of passengers who would view a flight between Hawai'i and San Francisco as a fairly interchangeable product with a flight between Hawai'i and Boston.  Same for, say, a trip between Hawai'i and New Zealand and a trip between Hawai'i and Japan.  Of course, a reviewing court must accept all factual allegations in a complaint as true at the motion to dismiss stage, "even if doubtful in fact."  *Twombly*, 550 U.S. at 556.  The problem here is that Plaintiffs have not offered any factual allegations to support their doubtful proposition in the first place.

---

which areas of the country may be harmed by an acquisition.  Here, scheduled air passenger service is a relevant product market *and there are three relevant large geographic markets.*  *Id.* at PageID.724 (emphasis added).  It then identifies these "three distinct markets" as the ones listed in the text above.  *Id.* at PageID.725.

17

Plaintiffs rejoin that things need not be viewed from the perspective of a consumer. They argue, instead, that it can sometimes be appropriate to define a geographic market from the perspective of suppliers. *See, e.g.*, Dkt. No. 83, at PageID.1086. That might perhaps be true. But Plaintiffs would still have to offer factual allegations to support the use of a suppliers' perspective here. They have not done so. The FAC offers no factual allegations to "state a specific, plausible theory describing how supply interchangeability is relevant to an analysis of the [airline] industry." *Malaney v. UAL Corp.*, 552 F. App'x 698, 702 (9th Cir. 2014). And, in fact, Plaintiffs' own briefing repeatedly refers, instead, to the perspective of consumers. *See, e.g.*, Dkt. No. 83, at PageID.1086 (appearing to acknowledge that "[m]arkets may be defined from the perspective of consumers because it is their options and choices on which the market analysis is dependent" (cleaned up)); *id.* at PageID.1090 (defending the three proposed geographic markets on the theory that "they are the area of effective competition where buyers can turn for alternate sources of supply" (cleaned up)).

The closest the FAC gets to offering factual support for Plaintiffs' supply-side theory is the broad allegation that "[s]ince any major existing airline has the capability to enter any market throughout the United States, the threat of potential competition from other existing airlines entering the market constrains airfares and services." Dkt. No. 64, at PageID.725. There are two problems with Plaintiffs' reliance on this allegation. First, if accepted as true, it would not support any of the geographic markets

that Plaintiffs have offered.  Nothing in the allegation that airlines compete *everywhere* across the United States plausibly supports Plaintiffs' contention that there are three more precisely delineated geographic markets within the United States (let alone even narrower geographic submarkets within those three).  Second, there is no reason to accept the allegation as true.  It is merely a "legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555.  It does not offer any actual factual content to support its broad claim that airlines truly do compete everywhere in the United States. And while a court must "accept as true all factual allegations in the complaint," it need not "accept as true conclusory allegations in a complaint."  *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 764 (9th Cir. 2018) (cleaned up).

In short, Plaintiffs have failed to adequately allege a geographic market.  This, standing alone, is a sufficient reason to dismiss the FAC.

Alaska would take things a step further:  it contends that broad, sprawling geographic markets of the sort Plaintiffs have proposed can, at least as a practical matter, *never* be valid in airline cases.  According to Alaska, the only appropriate geographic market is one defined specifically on the basis of origin and destination pairings—the route between Honolulu and San Francisco, for example.  But while an origin-and-destination pairing would possibly be on surer footing (at least in a case in which a plaintiff has not committed itself to the idea that airlines freely compete anywhere throughout the entire United States), it is unclear why a plaintiff in an

antitrust case could not, at least in theory, prove that a broader geographic market actually exists.  And to his credit, counsel for Alaska acknowledged at the hearing on the motion to dismiss that it could perhaps be theoretically possible to define a geographic market more broadly than origin-and-destination pairings, but that it is simply not within the realm of reality—or good-faith factual allegation—based on the experience and evidence of past airline cases.

But when the deficiency in a complaint is not a purely legal impediment to relief, but rather a failure to offer sufficient factual supplementation, the case for granting further leave to amend is stronger.  And so as to this issue as well, the court will take up the question of leave to amend toward the end of this order.

### 2.    The FAC Fails to Adequately Allege Anticompetitive Effects

Alaska argues that the FAC fails for a further reason:  even if it offered valid geographic markets, it still fails to plausibly allege "that the merger will probably lead to anticompetitive effects in [those] markets."  *St. Alphonsus*, 778 F.3d at 785.[6]

a. This argument is plainly correct for two of Plaintiffs' proposed geographic markets:  the "Interisland in Hawai'i" market and the "Hawai'i to Pacific and Asia" market.  In each of these proposed geographic markets, the FAC acknowledges that

---

[6]    The legal standards for Clayton Act and Sherman Act claims differ in certain respects, but the court's analysis here will focus only on the commonality that Plaintiffs accept:  that they must make a showing of probable anticompetitive effects in the relevant market.

Alaska did not compete at all prior to the merger. *See supra* p. 5. Because Alaska's purchase of Hawaiian thus did not decrease its market share or the concentration of competitors in that market, Plaintiffs have failed to plausibly allege that the transaction is anticompetitive in those markets.

That conclusion follows directly from the Ninth Circuit's decision in *DeHoog*. In that case, Anheuser-Busch ("ABI") merged with SABMiller ("SAB"). At the time of the merger, ABI was the "largest producer and seller of beer in the United States, comprising roughly 46 percent of the U.S. market share." 899 F.3d at 761. (Think "Budweiser, Stella Artois, and Michelob Ultra." *Id.*). SAB, meanwhile, was "the second-largest producer and seller of beer in the United States, controlling roughly 25 percent of the U.S. market share." *Id.* A merger of these U.S. market shares could well have raised antitrust concerns, but as part of its settlement with DOJ, "ABI was required to divest SAB's entire U.S. business," so that "the settlement would 'prevent any increase in the concentration in the U.S. beer industry.'" *Id*. Because the merger thus did not remove "an actual competitor *from the relevant market*," the Ninth Circuit affirmed the dismissal of the private plaintiffs' lawsuit. *Id.* at 764 (emphasis in original).

As far as the "Interisland in Hawai'i" market and the "Hawai'i to Pacific and Asia" market are concerned, the same is true in this case. Alaska did not compete in these markets prior to the merger, and its purchase of Hawaiian therefore did not remove an actual competitor from the relevant markets.

21

To be sure, the Ninth Circuit in *DeHoog* recognized that a merger could still be anticompetitive if it removed a "potential" competitor from a relevant market. *Id.* But to rely on this theory, a plaintiff must offer factual allegations showing that the potential competitor is "so positioned on the edge of the market that it exerted beneficial influence on competitive conditions in the market." *Id.* (cleaned up). For example, a potential competitor might be alleged to have been "poised on the edge of the market continually threatening to enter." *Id.* (cleaned up). Or it might be alleged to have been "eager to enter that market." *Id.* (cleaned up). But while Plaintiffs here generically assert that all airlines have the theoretical ability to compete anywhere in the United States, Plaintiffs offer no factual allegations to plausibly show that Alaska was poised on the edge, threatening to enter, or eager to enter the "Interisland in Hawai'i" market or the "Hawai'i to Pacific and Asia" market.

b. The analysis is somewhat more complicated for the proposed "Hawai'i – U.S. mainland" market. Plaintiffs do allege that Alaska and Hawaiian competed in twelve specifically identified routes between Hawai'i and the West Coast of the continental United States. And Plaintiffs allege that before the merger, Alaska held 17 percent of the seat capacity in the "Hawai'i – U.S. mainland" market, while Hawaiian held 23 percent. The combination, therefore, results in a single airline with 40 percent of the seat capacity. *See supra* p. 4.

But while courts should consider whether a "merger produces a firm controlling

an undue percentage share of the relevant market," those shares alone are "not

conclusive indicators of anticompetitive effects." *Freeland v. Nippon Steel Corp.*, Case No.

25-cv-01240, 2026 WL 747417, at *5 (N.D. Cal. Mar. 17, 2026) (cleaned up).  Rather,

"courts must examine the particular market—its structure, history, and probable

future." *Id.* (cleaned up).  And here, Plaintiffs have essentially pleaded themselves out

of being able to show anticompetitive effects in the geographic market they have

defined based on market share alone.  That is because Plaintiffs themselves assert that,

in this industry, airlines freely compete anywhere across the United States.  Dkt. No. 64,

at PageID.725.  Having embraced this proposition, Plaintiffs have precluded themselves

from arguing that Alaska and Hawaiian's current share of 40 percent of the "Hawai'i –

U.S. mainland" market would vest them with undue market power in that market.

Same goes for any more narrowly defined submarket within that geographic market.

After all, even as a combined entity, Alaska and Hawaiian hold only a small fraction of

the market throughout the entire United States.  *See* Dkt. No. 64, at PageID.702–03, 706

(acknowledging that the "Big Four"—which does not include Alaska or Hawaiian—

control "84% of all passenger airline service in the United States" and "74/84% of U.S.

capacity").  Accepting Plaintiffs' own position that airlines freely compete anywhere

throughout the United States, then, Alaska's current dominant share of any regional

market or route must be viewed as fleeting—as the result, in other words, of the Big

Four and other competitors deciding Alaska has not increased prices or degraded service beyond prevailing market conditions.

So the FAC cannot plausibly allege a probability of future anticompetitive effects in its proposed geographic markets by merely pointing to Alaska's market share.  But while market share cannot here support a prediction of future anticompetitive effects, Plaintiffs might still—given that the merger has already been consummated—make out a prima facia case by pointing to anticompetitive effects that have already begun to occur.  There is, after all, no better prediction than the one that has come true.  And Plaintiffs indeed pursue this route, pointing to concrete effects that they allegedly already have experienced, and that they claim are anticompetitive.  *See supra* pp. 5-6.

But with two exceptions, the FAC does not offer any factual allegations to support the conclusion that any of these effects are happening because of the merger. For example, Plaintiffs' anecdotal suggestion that they have experienced price increases in a small handful of routes, or less favorable route options, does not plausibly support the conclusion that Alaska has been raising prices or diminishing routes because of the merger.  The FAC does not, for example, allege that Alaska has been raising prices or making route adjustments at a faster rate than it used to do before the merger.

The two exceptions concern what Plaintiffs allege are the diminishment in the value of HawaiianMiles and Alaska's decision to terminate employees in Hawai'i, use less favorable aircraft for routes to and from Hawai'i, and relocate corporate leadership

and other key positions to Seattle.  The FAC does adequately allege that these are consequences of the merger.  And the court accepts as true at this stage that, as alleged, Hawaiian has been an important employer and community member in Hawai'i, Dkt. No. 64, at PageID.708-14, and that Alaska is, in contrast, what Plaintiffs characterize as "an absentee owner in Seattle," *id.* at PageID.735.  New ownership may have different values; it may not prioritize the Hawai'i market to the same degree that Hawaiian previously did, especially once DOT's guardrails expire after six years.

But the allegation that the merger may "threaten[] Hawai'i's economy and the well-being of Hawai'i's people," *id.* at PageID.677, even if accepted as true for present purposes, does not alone support a private antitrust action.  As the Supreme Court has recognized, "[e]very merger of two existing entities into one . . . has the potential for producing economic readjustments that adversely affect some persons."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 487 (1977).  Nonetheless, "Congress has not condemned mergers on that account; it has condemned them only when they may produce anticompetitive effects."  *Id.*

In this case, the FAC has pointed to various "economic readjustments" that Plaintiffs allege have harmed, and may continue to harm, the State of Hawai'i and its residents.  But it has not offered factual allegations that, accepted as true, plausibly show that the economic readjustments are anticompetitive effects—that is, that the effects are the result of Alaska's greater market power or the elimination of a competitor

within a defined geographic market. *See United States v. Phillipsburg Nat'l Bank & Tr. Co.*, 399 U.S. 350, 365 (1970) (recognizing that the "ultimate question" is "whether the effect of the proposed merger may be substantially to lessen competition" (cleaned up)). The FAC therefore fails to adequately allege anticompetitive effects within Plaintiffs' proposed geographic markets.

### D.    The Court Reserves on Whether to Grant Further Leave to Amend

The court is dismissing Plaintiffs' request for the remedy of divestiture with prejudice and without leave to amend. But Plaintiffs have also failed to allege an adequate factual basis for their requested injunctive relief, have failed to allege a valid geographic market, and have failed to allege anticompetitive effects within any proposed geographic market. And the question of whether to allow leave to amend on these latter failures is more complicated.

On the one hand, Plaintiffs have already been granted leave to amend once before. They filed the FAC only after having had a chance to study Alaska's motion to dismiss the original complaint, and Alaska made most of the same arguments about the lack of a proper geographic market and the lack of anticompetitive effects. Plaintiffs did not adequately address these arguments in their FAC, and it is not obvious that they can address them now. Indeed, in their appeal of the Magistrate Judge's stay of discovery, they come close to acknowledging that they will not be able to adequately amend their pleadings without discovery. But of course, as the Magistrate Judge

26

correctly observed, Plaintiffs "must satisfy the pleading requirements" of Federal Rule of Civil Procedure 8 "*before* the discovery stage, not after it."  Dkt. No. 81, at PageID.1070 (*Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014)).  Indeed, as *Twombly* recognized, "proceeding to antitrust discovery can be expensive," and that is precisely why district courts must "retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Twombly*, 550 U.S. at 558 (cleaned up).  So the fact that Plaintiffs appear not to believe they can adequately address deficiencies in their complaint without discovery weighs against, not in favor of, granting leave to amend.

On the other hand, the Ninth Circuit has repeatedly admonished district courts to freely grant leave to amend—including in this very case, in which the Ninth Circuit remanded to allow Plaintiffs an opportunity to amend to address deficiencies in the initial complaint's Article III allegations.  And while Alaska had made similar merits arguments in its earlier motion to dismiss, this order marks the first time this court has found some of Alaska's arguments to be correct.  Moreover, the court is granting Alaska's motion to dismiss, not on the ground that there is any insurmountable legal impediment to Plaintiffs' claims, but instead because Plaintiffs have failed to offer sufficient factual supplementation for them.  A ruling of that sort leaves at least the theoretical possibility that Plaintiffs might be able to remedy the problems in their FAC through further amendment.

In light of these competing considerations, the court defers decision on whether to grant further leave to amend the complaint.  Instead, the court will afford Plaintiffs an opportunity to file a letter explaining how, if given further leave, they would amend the FAC to sufficiently state a claim in light of this court's ruling on Alaska's motion to dismiss.  The letter must clearly describe the facts Plaintiffs would allege in a Second Amended Complaint, and it must do so in a manner that makes it possible for the court to understand which proposed facts would be relevant to which aspects of their claims.  And the letter should address the deficiencies this order has identified in the FAC.  For example, to the extent Plaintiffs' letter proposes defining narrower geographic markets and alleging anticompetitive effects in those narrower markets, the letter should explain how proposed additional allegations of this sort can be reconciled with Plaintiffs' earlier allegation, in the FAC, that "any major existing airline has the capability to enter any market throughout the United States."  Dkt. No. 64, at PageID.725.  Further details about the requirements for this letter, and Alaska's opportunity to respond, follow below.

**<u>CONCLUSION</u>**

For the foregoing reasons, the court makes the following rulings:

First, the court GRANTS Alaska's motion to dismiss and the FAC is dismissed in its entirety.  The dismissal of Plaintiffs' request for the remedy of divestiture is with

prejudice and without further leave to amend. The court otherwise reserves decision on whether to grant leave to amend.

Second, Plaintiffs are invited to file a letter by no later than May 22, 2026, that meets the requirements described above. The letter must be double-spaced, and may not be longer than fifteen pages. Alaska may then submit, by June 12, 2026, a letter brief of its own responding to Plaintiffs' letter, which also must be double-spaced and no longer than fifteen pages. Neither party need reassert arguments previously made; the parties may incorporate by reference their prior submissions, and their letters should focus squarely on the new proposed facts and the question of further leave to amend. Plaintiffs are cautioned that failure to timely file a letter will result in the dismissal of this lawsuit with prejudice. If Plaintiffs do file a letter, the court will decide whether to grant further leave to amend after receiving Alaska's responsive letter.

Third, because the court has dismissed the FAC, Plaintiffs' motion for a temporary restraining order and Alaska's counter-motion to strike Plaintiff's expert report are DENIED as moot. *See Waggoner v. Ryan*, No. CV 14-2040, 2014 WL 12689353, at *5 (D. Ariz. Dec. 16, 2014). Plaintiffs may renew their motion for a temporary restraining order if the court grants further leave to amend.

Fourth and finally, the court reserves decision on Plaintiffs' appeal of the Magistrate Judge's stay of discovery, and will resolve that appeal only after resolving whether to grant further leave to amend.

29

IT IS SO ORDERED.

Dated:  April 24, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

_____

Micah W.J. Smith
United States District Judge

---

Civil No. 24-00173 MWJS-WRP, *Warren Yoshimoto* et al. vs. *Alaska Airlines, Inc.*, et al.;
ORDER GRANTING MOTION TO DISMISS, RESERVING DECISION ON WHETHER
TO GRANT FURTHER LEAVE TO AMEND, AND DENYING MOTION FOR
TEMPORARY RESTRAINING ORDER AND CROSS-MOTION TO STRIKE AS MOOT